COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Baker
Argued at Richmond, Virginia

TAMMY LYNN ROHE

MEMORANDUM OPINION[*] BY
v.    Record No. 0779-98-2          JUDGE RICHARD S. BRAY
                                         APRIL 27, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
Thomas B. Hoover, Judge

(Anne H. Harris; Harris & Harris, on brief),
for appellant.  Appellant submitting on
brief.

Donald E. Jeffrey, III, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Tammy Lynn Rohe (defendant) was convicted in a bench trial

for an attempted breaking and entering, with intent to commit

larceny.  On appeal, defendant challenges the sufficiency of the

evidence to support the conviction.  Finding no error, we disagree

and affirm the trial court.

The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

"On appeal, 'we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

_____
[*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted). The credibility of the witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of the trial court will not be set aside unless plainly wrong or without support in the evidence. See Code § 8.01-680.

## I.

The record discloses that, on July 7, 1997, Geraldine Overstreet was ill and had remained home from her regular employment. In the early afternoon, Mrs. Overstreet "was in the bathroom washing clothes . . . [and] heard this bumping noise." She "went up the hallway[,] . . . heard something . . . cracking or . . . popping," and suddenly the front door, which had been "closed and locked," "came open." Mrs. Overstreet "scream[ed], you can't come in here," and "pulled [the door handle] in, because the person had something . . . to break the chain" restraint remaining on the door. During the commotion, the curtain fell from the doorway window, and Mrs. Overstreet recognized her niece, defendant, "standing there with a long screwdriver."

Mrs. Overstreet had not seen defendant since December, 1996, and she did not have permission to enter her home. When Mrs. Overstreet asked, "why are you doing this?," defendant answered that she "came to turn [herself] in" and requested that Mrs.

-

Overstreet "call her mother."  Instead, she telephoned the "courthouse" and reported to a deputy sheriff that "[defendant] just tried to break in.  Can you come and get her?"

When Mrs. Overstreet would not permit defendant to enter her home, which contained substantial furnishings and other items of value, defendant "put the screwdriver down," and declared that "she had two brown envelopes she wanted [Mrs. Overstreet] to have."  Mrs. Overstreet instructed defendant to "[l]eave it on the picnic table," later discovering that one envelope contained an operational cellular telephone.  Shortly thereafter, police arrived and arrested defendant for attempting to break and enter the Overstreet residence, with the intent to commit larceny, the subject offense.

Woodrow Overstreet, Mrs. Overstreet's husband, testified that he had spoken with his sister, Frieda Thornton, defendant's mother, several days prior to the offense and was advised that defendant "was to turn herself in to family," "supposed to turn herself in [at the church]; so [they] were looking for her." Defendant objected to the court's inquiry into the meaning of Mr. Overstreet's reference to "turn herself in."  Mr. Overstreet had not seen or spoken with defendant in "four or five years" but had "told her before, if she needed to come [to his home], she could come there when somebody was there, and [he] didn't want her to break in."

-

Defendant moved the court to strike the Commonwealth's evidence, arguing that it did not sufficiently prove that defendant attempted to break and enter the home with the requisite larcenous intent. Defendant's counsel hypothesized that defendant "was knocking on the door with a screwdriver, trying to knock louder so that somebody would answer, so that she could turn herself in." Finding this argument incredible, the court denied the motion and convicted defendant of the instant charge, noting that the evidence "shows only that [defendant] had the intent to break into the house, and that there were items of value there for her to steal."

## II.

"An attempt to commit a crime consists of (1) the specific intent to commit the particular crime, and (2) an ineffectual act done towards its commission." Bell v. Commonwealth, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991) (citation omitted). Intent is a state of mind that may be shown by the circumstances surrounding the offense, including defendant's words and conduct. See Chittum v. Commonwealth, 211 Va. 12, 16, 174 S.E.2d 779, 781 (1970). Thus,

> "[w]hen an unlawful entry is made into a dwelling, the presumption is that the entry was made for an unlawful purpose. And we think it likewise correct that the specific purpose, meaning specific intent, with which such entry is made may be inferred from the surrounding facts and circumstances."

-

Black v. Commonwealth, 222 Va. 838, 840, 284 S.E.2d 608, 609 (1981) (citations omitted).  "In the absence of evidence showing a contrary intent, the trier of fact may infer that a person's unauthorized presence in another's house was with the intent to commit larceny."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citation omitted).

The Commonwealth "'is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'"  Cantrell v. Commonwealth, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988) (citation omitted), cert. denied, 496 U.S. 911 (1990).  "The hypotheses [of innocence] which the prosecution must reasonably exclude are those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'"  Black, 222 Va. at 841, 284 S.E.2d at 609 (citation omitted).

Here, defendant, in possession of a screwdriver, forcibly opened the locked front door of the Overstreet residence, during a time when the house was customarily unoccupied.  Mr. and Mrs. Overstreet had not been in contact with defendant for a substantial time and had not given permission for her to enter their home, which contained personalty of significant value. The evidence provided no explanation for defendant's unlawful conduct, and the hypothesis offered by defense counsel was without support in the record.

-

Thus, the evidence clearly established that defendant attempted to break and enter the residence, then intending to commit larceny, and we affirm the conviction.

Affirmed.